Thank Your Honor. May it please the court. Dan Lloyd on behalf of Appellant James McElvain, I would like to reserve three minutes of my time for rebuttal. This court should reverse the District Court's denial of qualified immunity on all three section 1983 claims. First, the circuit split over whether the Equal Protection Clause encompasses claims of retaliation negates the District Court's assumption without citation that the right was clearly established beyond debate. Second, despite case law from within this circuit to the contrary, the District Court mistakenly assumed without citation that case law clearly established the petition clauses protection of an internal email and state law tort claims that complained only about Sergeant Ballou's own employment situation. And finally, the District Court committed legal error by skipping what this court and other circuits define as a threshold and independent essential element of an Equal Protection Clause disparate treatment claim. Namely, identifying others arguably indistinguishable from the plaintiff, but still treated more favorably. Mr. Lloyd, can I ask you a question? Yes, Judge McGuire. It looks like you raised arguments regarding the lack of clearly established law recognizing a retaliation claim under the Equal Protection Clause in your motion for judgment on the pleadings, but not in your motion for summary judgment. So I guess I just want to know what's your best argument here that we can reach this issue in light of your notice of appeal, which I think clearly notes the District Court summary judgment order is the subject of the appeal. It is the subject of the summary judgment order, but we reasserted that same argument that the right of an Equal Protection Clause, whether it extends to retaliation claims, we reasserted that on summary judgment that the law was not clearly established. And in fact, if the court would read the further excerpts of the record that was reasserted, that was actually contested by Sergeant Ballou in our district court squarely confronted it on page eight of its order, which is page 10 of the excerpts of the record. And under this court's case of Ahanchion versus Zenon pictures, which adopted and followed the United States Supreme Court's decision in Citizens United versus FEC. If a district court directly considers an issue, or in the words of Citizen United, if the district court passes upon that issue, it is within the appellate court's jurisdiction. Tell me where that is again. The cases or the district court opinion, page eight of the district court opinion, which would be page 10 of the first volume of the excerpts. So that argument was expressly renewed and the district court squarely confronted it and said that Chief McElvain raises again, whether the Equal Protection Clause encompasses claims of retaliation and whether the law was clearly established and said on the summary judgment record, I'm not changing my mind. So the district court squarely confronted this issue. Therefore, it is before this court properly. So turning to that... Tell me exactly where the district court talked about clearly established law at that point. I see, I'm on page 10. The court properly determined that her Equal Protection Claim was viable and the opinion and then it was a closed question, but there is not a ninth circuit case flatly holding that it does apply and the court already ruled that the claim was plausible. But where is the clearly established law question? The clearly established law is, would be found, that is on page 12. Finally, McElvain, page 12 of the excerpts, page 10 of the order. Finally, McElvain against claims he has been titled a qualified immunity. He concedes that a general matter, that the Equal Protection Clause... Yeah, that doesn't talk about the Equal Protection and Retaliation Clause either. But that was argued within our motion. That was squarely within our motion in the supplemental excerpts. We argued that the right was not clearly established. We reasserted that argument on reply in summary judgment and said the law does not clearly establish, particularly because the circuits are divided on this. And the district court said, even though you've raised this issue before, I'm not changing my mind on summary judgment. So I'll draw the court to line seven on page 10 of the order. This too was the subject of a prior motion in order. That is exactly what we argued in the prior motion, the 12C motion. And Sergeant Blue's argument in opposition is that essentially a party must appeal an interlocutory order or it's waived. We renewed this argument on summary judgment, which we were entitled to do under Barron's versus Pelletier. So therefore this issue is squarely before the court and the court should reject Sergeant Blue's request to dodge the It is quite clear that the circuits are divided on this issue and a right cannot be established beyond debate if judges continue to argue over its contours. The Supreme Court has made clear. So if we want to start there, then there is, it seems to me, a square holding, although a curt one, in one of our cases, not the Alaska case, but the other one. That Maynard? Maynard, which says the first part of Maynard talks about standing, but then it says, it quotes the jury instruction and it says this was a correct statement of the law, right? That may be a statement in general terms, but in fact, but importantly, several courts from within the Ninth Circuit have confronted this issue squarely and not a single one has second circuit in the minority. And to be sure the plaintiff in the Wilcox case, that fourth circuit case that was just decided a few months ago, just petition for certiorari to point out the circuit conflict and not even the, no circuit court that has confronted this issue has interpreted the Ninth Circuit to read very well, but it does seem to say that. And then also the one thing that was, I mean, I think you have a good argument here, but your opinion, your brief, your applied brief, very poignantly never discusses the Jackson case. I understand that wasn't a constitutional case, but it does analytically state pretty squarely that discriminating, retaliating against someone on the basis of sex is discrimination on the basis, for raising a discrimination on the basis of sex is discrimination based on sex. And you just never deal with that at all. So do you want to deal with it now? I can deal with that by adopting the Wilcox court's analysis and... Yeah, but the answer is it's a statute, it's not the constitutional rule, but why would the analysis be any different? The analysis would be different for the same reasons the Wilcox court explained, that the Jackson case simply does not inform on the 14th amendment question. But why? Why doesn't it? I mean, I understand the Title VII point, you're right about that. Title VII specifically has a retaliation provision. So I think the Title VII cases are not informative or clearly established law, but what about Title IX? Title IX, I would say that I would point the court to the Supreme Court's decision in District of Columbia versus Westby, that in order for the law to be clearly established, it's not enough that the rule advanced by the plaintiff is suggested by precedent or seems to be. It has to, quote, obviously follow. And if other courts are disagreeing with the view taken by the plaintiff, then the right is not clearly established. So that would be, frankly, the most expedient and efficient way that this court could confront this issue is to say other courts of appeals that have considered the issue have rejected the argument that Jackson clearly establishes a 14th amendment right of retaliation. And because the courts are disputed, it should follow its own precedent that if there's a circuit split, the right cannot be I want to ask about the equal protection claim. Are you saying, I mean, here what you have is a claim that if your argument is that there has to be a person, not for the purpose of proving that the reason was based on sex, but that even if the reason, even if they did something specifically because of her sex, she still doesn't have a cause of action unless there's a person who is sufficiently similarly situated that was treated differently. Is that your understanding of equal protection law? That's my understanding based on... So if, for example, there was a, he had sex with her, you know why I'm not promoting you? It's because you're a woman and I don't want any women in that job. Still, unless you can find an absolutely parallel person, there's no cause of action. That can't be right. Well, I would point to the court's decision in Pimentel, which said... That was a completely different circumstance. I mean, in that situation, the problem was that there was no, there was no line of demarcation that they were talking about as to what the class was, that there had been any action by one entity treating, allegedly treating them badly for that reason. In other words, you had two different entities that were doing two different things and they say, well, you can't put these two together and have one equal protection claim. But the cases are a legion, I think, that if you do something to someone because of their sex and you would have done something different if it wasn't because of their sex, the question of whether there's a person out there who's just like that had possibly met. Well, then there'd be no way to square either Pimentel or Furness versus Sullivan, which this court decided that despite clear evidence of discriminatory animus towards... So in my hypothetical, a woman loses. He says, I'm not going to promote you because you're a woman. If you were a man, I'd promote you. And she loses. I think that would be, and frankly, Judge Berzon, I think that proves the point is that this isn't clearly the contours of when... A man who was just like her, who was promoted, she's going to lose, even though he tells her that that's the reason he's not promoting her. I think if that evidence is so squarely and proves that gender is solely the reason, then it probably falls within the holding of Davis and Lindsey versus Shalmi. But the distinction here is that cases subsequent to that have a threshold showing. And I think that starts from the U.S. Supreme Court's decision in Bacow versus Quill, which said for the first time, the Equal Protection Clause creates no substantive rights. What about the class of one cases of which it's difficult to prove a class of one discrimination case, but you can do it. It's incredibly difficult, but even... You can do it. There's no rule that you can't have a class of one Equal Protection Claim. But in your theory, you couldn't. No, you can have a class of one, but you do have to show similarly situated, but treated differently. That is what Dementel, what Furness, what Nortinger said. It is also what the Eighth Circuit said in Flowers versus City of Minneapolis, who squarely alleged that he was being harassed because of his race as an African-American. And the Eighth Circuit said, you may be alleging racial harassment, and that may be completely in violation of the Equal Protection Clause, but your claim fails because you cannot point to anyone who is similarly situated. So at best, the law is not entirely clear on this, on when this threshold showing has to be made and when this threshold showing does not have to be made, because there are cases that squarely say, even dealing with suspect classifications, that the threshold showing must be made. And that was the- Mr. Lloyd, can I interrupt? Yes. I just wanted to ask a question regarding this discrimination disparate treatment claim. Is your argument regarding an absence of similarly situated persons asserting that when construing the facts and the like was favorable to Ms. Ballou, that even Reuter is not sufficiently similar to support Ballou's discrimination claim? I'm glad you brought up, Judge McGregor, I'm glad you brought up Brian Reuter, because yes, there are undisputed distinctions. Although those two, unlike the other alleged comparators, were going for the same rank, that being Sargent, there has never been an allegation that Brian Reuter should have had a sustained finding of violating the policy, so you have an admitted violation of policy versus another officer who was completely exonerated and said, this doesn't even implicate the policy at all. And the professional standards unit looked at both officers, whereas Sargent Ballou had a history of refusing to write reports- Let me ask you this, Mr. McGregor, had the district court determined that there were sufficient similarities between Ballou and her comparators to put the question to a jury? How's that question before us on this interlocutory appeal? Can, I guess, I just want you to explain what you think our jurisdiction at this stage covers. Had the district court said there was sufficient evidence, that might be the problem, but the district court passed on the inquiry altogether. The district court said, I'm not going to consider the relevance or distinctions between these comparators. I'm not going to do it. I'm just going to pass it to the jury. That's no different than in an excessive force case where the district court would say, I'm not going to decide whether this force was excessive or not I'm just going to pass it to the jury. And the Supreme court and this court has consistently said, no, there's still jurisdiction to consider whether that, under those facts, it is a clearly established constitutional violation because it has to look- Under a state of Anderson, don't we have to look at the facts and the like most favorable to her at this stage? You do, but at the same time, there's no dispute. She does not dispute that Brian Reuter did not violate policy. So in that sense, yes, you consider all the evidence in a light, most favorable to Sergeant Ballew, but you necessarily- The problem is, and this somewhat goes back to my other concern, but whether that's a relevant distinction depends on whether it was taken into account. I mean, if in fact Chief McElveen was not, that had nothing to do with the reason why he did what he did, he did it because she was a woman, then whether he, whether there is, that fact becomes no more relevant than whether he had red hair and she had blonde hair. So you can't in some vacuum, ask the question whether they were similarly situated, you have to ask it in terms of the decision that was made. Correct. Judge Brisson, I do see that my time has expired. I would like to answer your question. Please answer your question and we'll tell you when your time has expired. Thank you. Very good. Thank you. That goes to the question of, is it material? Does it matter under substantive law? Well, it's a material in light of the actor, the person who was making the decision, right? And in other words, I don't see how you separate out the question of whether these people were similarly situated from how the decision was being made. And in my hypothetical, if the chief said, look, I'm not going to mark you because you're a woman and that's the only thing relevant to my decision. And you still had Rooder out there. Could you still come in and say, oh, but there was no similarly situated person because Rooder had already been cleared and she hadn't been, even though we know that had nothing to do with the decision. I think the answer to that question is what you've described, Judge Brisson, is it would be a square lid violation of Title VII or the Washington laws against discrimination. But if the Equal Protection Clause creates no substantive rights and the case is from- The Equal Protection Clause certainly does create a substantive right. 1993 doesn't create a substantive right, but the Equal Protection Clause creates a substantive right not to be a non-equal protection of the law. I would have thought so before 1997, but the Supreme Court said in Vacko v. Quill, the Equal Protection Clause, quote, creates no substantive rights and that injects- What it means is it only creates a comparative right, i.e. you can't be treated worse because of some characteristic, if it's a characteristic, oh, and that's another point I wanted to raise. Well, this is more with regard to a retaliation issue, but on the retaliation issue, when you say that there is no equal protection protection, there is an equal protection protection, but it may be a rational basis one. In other words, if she was treated the way she was treated because she raised these issues and somebody who hadn't raised these issues wasn't treated that way, then she has an equal protection argument. The question is whether it's sex discrimination, not whether she has an equal protection argument, and that matters as to the level of scrutiny, but it doesn't mean she doesn't have an equal protection, a substantive equal protection claim, right? Well, if that was the approach this court took, it would be contrary to what the majority of other circuits have said and said that retaliation does not create any sort of classification within the 14th Amendment. Well, it does create a classification between those who were those who protested and those who didn't. It's just a question of what scrutiny you apply to that. That that would be one way to approach it. The fact that other cases have said things that don't make any sense or haven't because no one ever addressed this question, for example, the one that I'm just raising now, everybody was thinking, is this sex discrimination? But the question, a related question is, is it an equal protection violation? And it might be, we don't know that. And you probably went on unqualified immunity as to that, maybe, but it's not that there's no equal protection claim. If that was, I would have to say, Your Honor, that that probably proves the issue, but yeah, that is potentially that creates a classification, but it's not a suspect classification. And if that's the case, yeah, we would do it. The court would probably have to apply a rational basis review. All right. Thank you very much. And I want to say that you both, you're producing your argument have been actually quite excellent. So thank you. Thank you, Your Honor. Mr. Caruso. May it please the court, Matthew Ellis. I represent the plaintiffs. Can you hear me okay? Yeah. Matthew Caruso, Ellis, I see Mr. Ellis, go ahead. Yeah. I represent the plaintiff appellee officer, Julie Ballou. The court's jurisdiction of this matter is limited. The court cannot, one cannot appeal a district court's summary judgment order in so much that the order determines whether or not there's a genuine issue of fact, in many ways, that's what the bulk of the appellant's argument does. Tries to, argues that they disagree with the facts. They disagree with the court's view of the evidence and weight of the evidence, but that's not properly before the court or that's not a matter in which this court has jurisdiction of, even if the appellant raised it on summary judgment and preserved the issue, which we would argue that they did not in summary judgment, the appellant wrote the question is not the right to be free from gender discrimination or retaliation, but that was not the issue that it was raising. It was raising whether or not it can retaliate against someone based on certain circumstances or the petition clause claims, but the entire equal protection clause, my position is not before the court, it was not preserved. He had already been told by the district court that it thought it was a plausible claim on the retaliate equal protection retaliation clause. So he didn't have to re-raise that, but did he, he says he also raised the qualified immunity fairly established law question at that point. Did he? I definitely raised it on the motion for judgment on the pleadings, but during summary of judge, during summary judgment, they said this was not the issue. What was that issue was the petition clause and whether or not it was okay for them to pass her up for promotion based on the record, which is an evidentiary issue that there was a factual dispute about I do want to jump into the court, unless the courts have questions. Counsel, did the district court say what your adversary says it said in terms of it having already been raised? Yes, the court said, basically, I've already ruled on issues regarding the qualified immunity and nothing that I've seen changed my ruling. I mean, why doesn't that cover it then? Because it wasn't raised. But that doesn't matter if he decided it, but where did he decide it? Where did he decide it in the summary judgment? I didn't see, we're talking, obviously the claim keeps changing. I'm now talking about the equal protection retaliation claim. Where did the district court ever, either with regard to the motion to dismiss or with regard to the summary judgment, address the clearly established law with regard to the equal protection retaliation issue? I don't have handy the site for where it did it. Well, it didn't in a summary judgment, but it did in the motion for judgment of pleadings. I'll concede that that was raised then, but it wasn't raised again at summary judgment. If it was raised, it was pretty unclear. So, but why did you have to raise it again if it was already ruled on? It's just futile. Well, it isn't futile. He could have raised the issue of an interlocutory appeal at the motion of the judgment of pleadings. But if he was making a legal ruling at the point of the motion to dismiss, he made a legal ruling that then you have to say it again for some summary judgment. Well, you have to raise the issue. So if it's not a fact-depending question in any way? Well, there are always facts that are somewhat dependent. I mean, defendant's brief on this legal issue is 1100 pages long. So it is something that you, if you can raise on a motion to dismiss, and then once the facts have been developed, re-raise on summary judgment. But as the judge already said, there is no such thing that there is clearly established law saying that there is a retaliation equal protection claim. If he said that, I don't think he said it, but if he said it, or I'd like to see where he said it, then I don't know what the point is of raising it again. He already said it. That's a legal ruling. Then it goes to an issue of whether the argument's been waived. This is something that should have been presented within 30 days from the ruling. But I don't know that he did in fact raise it. Go ahead. Keep going. Very well. It looks like, it looks like, I'd like to ask you about the equal protection retaliation claim. It looks like a majority of circuits who have addressed the viability of a retaliation claim brought under the equal protection clause have expressly held up the right not to be retaliated against for opposing sex discrimination is rooted in the first amendment, not the equal protection clause, what's your best authority that the law is clearly established to the contrary, Mr. Ellis? Thank you, Judge Maria. The best authority in the ninth circuit is Alaska versus EEOC and Maynard versus city of San Jose. Well, actually neither of those are terribly helpful, but Maynard versus the city of San Jose seems directly on point. Agreed. Alaska versus EEOC is helpful because it's specifically talking about punishing a woman who opposes sex discrimination and analyzes that as an equal protection analysis, as opposed to a first amendment analysis. So I think that's on point. Maynard, as the court noted in the questions for opposing counsel, expressly talked about- But it's about sexual harassment. It's not about, the retaliatory discharge comes in as part of the sexual harassment claim, as I understand. And then it analyzes the, it actually says, unlike pay disparity and this claim doesn't allege differential treatment because of race or sex. Rather, the 14th amendments to process clause incorporates the first amendments free speech guarantees. So it's a first amendment issue. That's what it seems to say. Is Mr. Ellis still with us? I don't think so. Apparently not. You lost all that- I'll give him a call now, Judge. You lost all that brilliant exegesis. It wasn't brilliant exegesis. It was a reading the English language. Sometimes it's not done very well. So Sam, are we working on this? Uh oh, maybe we've lost Sam too. Yes, Judge, I'm dialing Mr. Ellis on the phone right now, trying to get ahold of him. Judge, Mr. Ellis is connecting by phone. He should be in in just a minute or two. Oh, Mr. Ellis, can you hear us? I can. Excellent. Thank you. Okay, Mr. Ellis. So I don't know where we were, but the Alaska seems to, I mean, it says in a footnote that the retaliatory discharge claim alleges conduct that would violate the Equal Protection Clause, but that's really because of its tie in with not curing the sexual harassment that she was alleging. Then there's a separate provision about Ward's claim of retaliatory discharge, where he says that doesn't allege differential treatment because of race or sex. She complains that she was punished for speaking up about the harassment of Jones and says that that's a First Amendment claim. The opinion says so it seems that seems to be the same claim that was raised in Maynard, essentially, and here it says it's not an Equal Protection claim. Clearly established law in Alaska. That's what I want to know in this case. I don't think you can read Alaska and Maynard together and conclude anything other than that it is unlawful to a woman if she opposes her own sex discrimination. Can I ask a question? Why do you care about this? I mean, if there either is or isn't a First Amendment claim. If there is a First Amendment claim here, she wins. And if there isn't, she's never going to win. She can't win on the Equal Protection Retaliation claim either. So it seems as Alaska somewhat indicates that this is really much more of a First Amendment concern. Why do we have to push it into what is it accomplished to push it into the Equal Protection Clause? Well, with all respect, Your Honor, I don't see it as pushing it into Equal Protection Clause at all. I think the case law in the circuit suggests or states and suggests that it is an Equal Protection violation to either discriminate or retaliate based on sex and based on race. So I think that's how I sort of answer your question about, I guess, why we care. There's one thing. If you can't win your First Amendment claim, how would you win? I'm not saying you can't, but if you can't, how would you prevail on an Equal Protection claim? Retaliation. You're talking about you're talking about the Equal Protection sort of retaliation portion of the claim? Yes. I mean, under the under the First Amendment. I'm sorry, what? If the court is saying we can't state a claim for Equal Protection Retaliation, I'm saying that it seems to be a complete overlap with the First Amendment claim. Well, it's not a complete overlap of Officer Ballew's First Amendment claim, because that's about the petition clause. She didn't bring a claim under the First Amendment. Thank you. What about the question we were discussing about Pimentel and whether there is a separate Equal Protection claim invariably that there has to be a similarly situated person or you can't have an Equal Protection claim? Do you agree? Yeah, I think, sure. I think really that the appellant really misunderstands the language about similarly situated in Pimentel and Ross and in those cases. Those are not cases about comparator evidence at all. Those are cases about the Equal Protection clause emphasizes disparity in treatment by the state between classes, individuals in situations that are arguably indistinguishable. And basically, if you're going to pick on people and treat them differently than other similarly situated people, you have to have a reason. And if it's based on sex or race, it has to be a really good reason. In other words, these are cases looking at the level of scrutiny to apply when reviewing the conduct. They're not talking about comparator type evidence at all. Comparator evidence is one of many ways to show pretext, and that's all that it is. It is not a requirement under the Equal Protection clause to have comparator type evidence. FDIC versus Henderson makes that clear. There is, you have to show intentional discrimination, but there's no specific test that an Equal Protection plaintiff is required to meet in order to survive a motion for summary judgment. They just must offer evidence to show a genuine issue of fact as to motivations. That is to say that the conduct was because of sex. To the extent that the appellant disagrees with how the court weighed the evidence and the fact that they found numerous issues of fact as to respondents motivations, including direct evidence of discrimination by sex stereotypes, close proximity of time, negative statements, evidence that the IA processes were manipulated, giving rise to plaintiffs not getting a promotion. And was there a finding by the district court that the evidence did not demonstrate that there was manipulation of the IA process based on sex? No, there was a finding that, so the district court found that the, there's two different IA processes. So just to clarify, there's the initial IA process, which led to the appellee not getting the promotion and there's evidence in the record where the district court found that that was subject to manipulation and that that process there was done in a way that was different than was for male employees. The IA processes after Sergeant Ballew didn't get the position. The district court found that there wasn't evidence that that was motivated by Sergeant Ballew's sex, but that there was evidence that was motivated by a retaliatory evidence. And therefore, how do you, but so how does the fact, for example, that he expanded the, I mean, the suggestion seems to be that with regard to Reuter in particular, that he expanded the IA, which the suggestion is that it was because of sex or not? Not because of sex. How does it feed it? How does it feed it? You said that it, that feeds into the finding that there was sex discrimination, but how does it as a district court determined otherwise on the record? I mean, I understand that this is a summary judgment record and we can look at it otherwise, but on the other hand, we don't do that at this junction in either direction. Sure. Yeah, sure. So the issue regarding the treatment of Reuter relate to the issue of the treatment of Ballew prior to her not getting the promotion in which the judge found that there was an issue of fact as to whether that was motivated by sex, because a plaintiff was subject to an IA investigation and discipline for conduct that other men weren't. Plaintiff then raised that as an issue and said, Hey, you're treating me differently. Look what happened to Reuter. And then they said, okay, well, I guess we'll look at Reuter. They did. And then they determined that he did not violate policy, even though they found that the plaintiff did. So it really relates to the conduct of the respondents that gave rise to the initial IA investigation, which resulted in her not getting promoted. I know it's complicated, but it is complicated and I'm not sure I understand what you're saying, but go ahead. Sure. I will say, first of all, since I'm on the phone, I don't see how much time I have. So I assume someone will stop me when you have 12 seconds, but go ahead for another couple of minutes. Okay. So the other issue I think it's worth addressing is the issue of the petition clause that's, you know, for a long time, it's been for 40 years, it clearly established that you can't retaliate against someone to access the court, to petition the government for grievances. It's also been established that that includes pre-litigation and communication such as demanding the settlement of a legal claim or threatening litigation. Here, the court interpreted Plinkett's complaint as raising concerns for retaliation for both filing the lawsuit, but also filing notice of court claims, which are nothing more than a notice of an intent to petition the government for grievances and for opposing discrimination, which she did in July, 2018. Did she have to file a state court lawsuit? No, I think when the appellant's talking about court claims, what they're talking about is court claims notices. Okay. But there was an official notice, not just some internal emails or grievances. There were internal emails and there were two official former court claim notices that were sent months before the lawsuit were filed and months before Plinkett was passed up for the third time for promotion. Mr. Ellis, what's your best argument that the law is clearly established that pre-litigation communication, such as the demand email and the state tort notices are protected petitioning activity under the petition clause? Sure. SOSA versus DirecTV says pre-litigation communications demanding settlement of a legal claim or threatening litigation are protected under the petition clause. So in any courts, the courts that have squarely looked at the issues of whether a formal tort claim notice was protected under the petition clause in other circuits have all found that it was. I think the appellant pointed to a couple of cases where there were district courts, which according to the appellant said they weren't, but that's not true. The cases that have looked at it and found that one couldn't state a claim under the petition clause for a notice of tort claim found that it failed on causation, not on issues of whether that is or is not protected conduct. If it wasn't protected conduct, the court would have never had to look at the lack of causation. This was essentially a formal part of the state procedure for bringing a tort claim, right? Correct. It wasn't just a letter or a demand letter or something. It was something that they had to do in order to bring a tort claim. It's a precondition to bring, yes, it's a precondition to bringing state law claims in any court. It was like filing an agency complaint or something like that. Sort of. It's really just giving the employer or the public entity a heads up that they intend to file this lawsuit. And we intend to file a lawsuit, not just for complaining about something. Correct. Counselor, if I could ask briefly about on the petition clause, the balance between individual beef and a matter of public concern, because aren't we supposed to, in effect, balance that or at least look at it? And as I read it, she wasn't complaining that there was general sex discrimination or general retaliation. So doesn't that at least point in the direction of it being just a personal beef? I don't think so, your honor. I think if you look at the course of conduct and you look at the that gives context to the communications, the court can see that she was, yes, she was complaining of discrimination against her, but she's also complaining of discrimination based on a longstanding custom policy and practice of discrimination, which claims to be substantial evidence of numerous. And so as a result, it wasn't really solely about her. That said, under Connick, the Meyers and Gavin Alpha Energy Sabres allegation that somebody is bringing in claims of discrimination against government officials is a matter of public concern. The content of that is a matter of public concerns. In Connick v. Meyers, they said it's clear that talking about Gavin's statements about the school district's allegedly racial discriminatory policies are a matter of public concern. Did the notice of the tort claim include an allegation of sex discrimination? Yes, yes. I mean, it's a notice of tort claim that she's bringing a claim for sex discrimination. OK, your time is way over. And I thank both of you for helpful arguments in a difficult case. And I'm so sorry for both of you about the IT problems which seem to be a part of the course these days. So the case of Ballew v. McKelvin is submitted and we will be in recess for eight minutes. Thank you. Thank you.
judges: Boggs, Berzon, Murguia